**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

BARBARA PAOLUCCI,          )
                           )
            Plaintiff,     )    **CIVIL ACTION**
                           )
v.                         )    No.  12-1253-MLB
                           )
RENDER KAMAS LAW FIRM,     )
                           )
            Defendant.     )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 37). The motion has been fully briefed and is ripe for decision. (Docs. 38, 50, 59). Defendant's motion is granted for the reasons herein.

**I.    Facts**

Defendant Render Kamas, a law firm in Kansas, represented several hundred individuals, including plaintiff Barbara Paolucci, in a series of lawsuits that were known as the "Parade of Toys Litigation." In April 1997, defendant filed the first lawsuit in the litigation. After a motion for class certification was denied, defendant filed individual lawsuits on behalf of all plaintiffs. Paolucci's individual lawsuit was styled <u>Paolucci v. Hillcrest Bank, et al</u>, Case No. 99-1643 (District Court of Johnson County, Kansas). Prior to the cases proceeding to trial, six settlements were obtained from various defendants totaling more than one million dollars. In November 2000 and November 2001, two trials were held involving sixteen plaintiffs, but not Paolucci. The results of the jury trials were unfavorable to the plaintiffs. In the sixteen cases that went

to trial, fourteen resulted in defense verdicts and the remaining two plaintiffs were only awarded $5,064.

After the trials, defendant filed appeals on behalf of the plaintiffs. The cases of the remaining plaintiffs were stayed pending the outcome of the appeals. The trial court's rulings and the jury verdicts were affirmed by the Kansas Court of Appeals. On August 17, 2004, Albert Kamas sent an email to Paolucci and described defendant's attempts to contact her. Kamas informed Paolucci that the case was pending before the Kansas Supreme Court and, if the appeal was not successful, defendant would seek to withdraw from the remaining cases because the cost to prosecute could not be justified. Defendant informed Paolucci that there had been no payments to any plaintiffs from the settlement proceeds.

On September 14, 2004, the Kansas Supreme Court denied review. On November 2, 2004, defendant sent a letter to Paolucci informing her of the unsuccessful appeal and notifying her that it would be moving to withdraw from her case if it did not hear from her within two weeks. There is no evidence that Paolucci responded to defendant's November 2 letter.

On September 9, 2005, defendant filed a motion for leave to withdraw as counsel from all remaining cases in the Parade of Toys Litigation. (Doc. 38, exh. A3). On September 17, 2005, district judge Steve Leben granted defendant's motion to withdraw from all cases and entered an order to show cause why the remaining cases should not be dismissed. (Doc. 38, exh. A4). On October 21, 2005, Paolucci filed an opposition to the motion to withdraw and moved for sanctions. In her filing, Paolucci attached an affidavit in which she

stated as follows:

> I, Barbara Paolucci, am a Plaintiff in all/various cases against the Parade of Toys Defendants and I make this sworn statement under the penalty of perjury.
>
> ***
>
> 3. To the best of my knowledge and belief, Render Kamas obtained at least 3 settlements for sums they claimed were $30,000.00 or less. And at least one settlement for $150,000.00. I have recently learned that they also obtained a settlement in the amount of $650,000.00 and again, I have not received one penny; I have not received notice of the majority of settlements they obtained or any monies won at trial. To the best of my knowledge and belief, none of the Plaintiffs represented by Render, Kamas has received a dime.
>
> ***
>
> 5. More recently, I had another attorney in the Kansas area start searching for information through court records and was told that there was a $650,000.00 settlement. I was never informed of this settlement or any others after the year 2000 and to date, have not received one cent from any settlement monies.
>
> ***
>
> 15. I ask the Court to keep in mind that plaintiffs, myself included, have been waiting for 10 years or more for the return of the money they lost in this scam and that having Render, Kamas as an attorney has resulted in adding insult to injury. It can not be possible that over $750,000.00 in settlements goes to the law firm and $0.00 goes to the clients who were harmed.
>
> 16. I am respectfully requesting the Court issue a written Order to all attorneys for them to submit to all Plaintiffs, myself included, their malpractice insurance policies in effect from the time they were retained as attorney by each Plaintiff to the present and this disclosure should include all pertinent information about the policy such as the address of the insurance company, the policy number, copies of the policies and any other information that Plaintiff may need in order to pursue a legal malpractice case against any/all of them.

(Doc. 38, exh. B at 10-15).

The court held a hearing on Paolucci's motion on January 18,

2006. The court ordered defendant to provide Paolucci with an accounting of settlements and expenses and continued the hearing to March 30. On April 11, 2006, the court denied Paolucci's motion for sanctions and granted defendant's motion to withdraw, stating that "Paolucci's complaints concerning Mr. Kamas clearly establish that the attorney-client relationship has deteriorated to such a point that withdrawal is appropriate." (Doc. 38, exh. A5). Other than providing Paolucci with an accounting on February 6, 2006, defendant did not do anything on Paolucci's behalf after filing the motion to withdraw in September 2005.

On December 27, 2007, Paolucci filed a legal malpractice suit against defendant in the Supreme Court of the State of New York. On May 5, 2009, the suit was dismissed after the court determined that it lacked personal jurisdiction over defendant. Paolucci appealed the decision and it was affirmed by the appellate court on May 3, 2011. Paolucci appealed to the Court of Appeals of New York, the highest state court, and it denied her motion for leave to appeal on January 10, 2012.

On June 14, 2012, Paolucci filed this complaint against defendant alleging a claim of legal malpractice. Defendant moves for summary judgment on the basis that Paolucci's claim is barred by the statute of limitations or, in the alternative, that she cannot prove her claim of malpractice because she has not retained an expert.

**II. Summary Judgment Standard**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of

-4-

summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III.   Pro Se Status**

Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel.  It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall, 935 F.2d at 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant.  See id.  Plaintiff is expected

-5-

to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries. Hill, 14 F. Supp.2d at 1237. Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions. Id. In the end, plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment. Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

**IV. Analysis**

   **A. Statute of Limitations**

Because an action for negligence against an attorney relies on a contract for employment, a legal malpractice claim generally contains elements of both tort and breach of contract. Pancake House, Inc. v. Redmond, 239 Kan. 83, 85-86, 716 P.2d 575 (1986). As a result, a legal malpractice claim can be brought as a breach of contract claim when "the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby." Id. at 86. Nevertheless, when "the essential claim of the action is a breach of duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort." Id.

In this case, the allegations are that defendant wrongfully obtained settlement funds that were due to Paolucci and other plaintiffs. These allegations sound in tort. See Jeanes v. Bank of

Am., N.A., 40 Kan. App.2d 281, 286-288 (Kan. Ct. App. 2008)(a malpractice action is one in tort when the actions complained of do not relate to duties contained in the contract).

In Pancake House, the Kansas Supreme Court set out the main theories used to determine when a cause of action accrues in an attorney malpractice case sounding in tort:

> Depending upon the facts and circumstances of each case, there are at least four theories which can apply to attorney malpractice in Kansas as to when the accrual of a cause of action occurs and the statute of limitations begins to run. These include:
>
> (1) The occurrence rule-the statute begins to run at the occurrence of the lawyer's negligent act or omission.
>
> (2) The damage rule-the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.
>
> (3) The discovery rule-the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.
>
> (4) The continuous representation rule-the client's cause of action does not accrue until the attorney-client relationship is terminated.

239 Kan. at 85-86.

This action was originally filed on December 27, 2007. Thus, if Paolucci's legal malpractice claim accrued prior to December 27, 2005, this action is barred by K.S.A. 60-513.[1] Defendant contends that this

---

[1] There is no dispute that Paolucci's filing in this court on June 14, 2012, exceeded the six months allowed by the Kansas Savings Statute, K.S.A. 60-518, because it was filed within six months of the decision issued by New York's highest court.
Paolucci's complaint could also be read to state a claim for fraud. A fraud claim must also be filed within two years of discovering the injury. Evolution, Inc. v. SunTrust Bank, 342 F. Supp. 2d 964, 972 (D. Kan. 2004).

-7-

action is barred under both the discovery rule and the continuous representation rule. Paolucci responds that her action is not barred because defendant provided continuous representation until April 11, 2006.

The continuous representation rule is dependent upon the facts set forth in each case. In Gansert v. Corder, 26 Kan. App.2d 151, 153-156 (1999), the defendant attorney continued to represent the plaintiff until he was formally granted leave to withdraw. Eleven months earlier, however, the plaintiff had informed the defendant that she wanted new counsel, was going to file suit against him and file a complaint with the disciplinary board. The Kansas Court of Appeals held that the continuous representation rule did not apply after the plaintiff's actions and statements made clear that she terminated the defendant's representation. When the trust and confidence on which the rule is based comes to an end, the continuous representation rule will not apply to extend the statute of limitations. Id. (citing Morrison v. Watkins, 20 Kan. App.2d 411, 419, 889 P.2d 140 (1995)). The court emphasized that the "true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion." Gansert, 26 Kan. App.2d at 156 (citing Pancake House, 239 Kan. at 87)). In Gansert, the plaintiff had all of the evidence necessary to prosecute a claim for attorney malpractice at the time she stated her allegations against the defendant, prior to the court's order granting the defendant's motion to withdraw.

The Tenth Circuit has taken a similar stance. In Elder v. Herlocker, No. 09-3210, 2010 WL 5157359, 2 (10th Cir. Dec. 21, 2010),

the Tenth Circuit explained that the Kansas Supreme Court does not apply the principle of continuous representation, even when the underlying litigation has not been resolved, "[i]f it is clear that the plaintiff . . . has incurred injury and if it is reasonably ascertainable that such injury was the result" of defendant's negligence. (citing Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 271 (1991)). In such cases, "the statute begins to run at the time that it is reasonably ascertainable that the injury was caused by the attorney's malpractice." Id.

Reviewing the facts in this case, defendant notified Paolucci as early as November 2004 that it would seek to withdraw from her case. Defendant followed through with its plan and moved to withdraw on September 9, 2005. That motion was granted by the court on September 17. Paolucci filed an objection on October 21, which could be construed as a motion for reconsideration, seeking sanctions against defendant and alleging legal malpractice. Paolucci's allegations on October 21 clearly evidence a deteriorated relationship between Paolucci and defendant. They also show that she had knowledge of the alleged malpractice, i.e. embezzlement of the settlement proceeds, on October 21, 2005. Moreover, there is no evidence that an attorney-client relationship existed after September 9, 2005. The only interaction between the parties after September 9 was a court-ordered disclosure of expenses by defendant.

The court finds that Paolucci's affidavit supports a finding that on or before October 21, 2005, Paolucci had knowledge of her alleged injury and that the injury was caused by defendant. Moreover, the court finds that the attorney-client relationship was terminated

-9-

when the district court entered the first order granting defendant's motion for leave to withdraw on September 17, 2005. Paolucci's objection to the court's order did not revive the relationship as it had already deteriorated and terminated on September 17, 2005.

Paolucci filed her complaint against defendant on December 27, 2007, more than two years after she had knowledge of her alleged injury and defendant's alleged malpractice. Therefore, her claim is barred by K.S.A. 60-513.

**V.    Conclusion**

Defendant's motion for summary judgment is granted.[2] (Doc. 37).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __1st__ day of August 2013, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE

---

[2] Paolucci's motion to amend (Doc. 48) is denied as futile. <u>See</u> <u>Schepp v. Fremont County</u>, 900 F.2d 1448, 1451 (10th Cir. 1990).

-10-